**SYSTEMS AND APPLIED SCIENCES CORPORATION, Plaintiff,**

v.

**James C. SANDERS, et al., Defendants,**

**Computer Data Systems, Inc., Intervening Defendant.**

**UNIFIED INDUSTRIES INCORPORATED, Plaintiff,**

v.

**James C. SANDERS, et al., Defendants.**

**REHAB GROUP, INC., et al., Plaintiffs,**

v.

**James C. SANDERS, et al., Defendants.**

**Nos. 82–1834, 82–1966 and 82–1969.**

United States District Court, District of Columbia.

July 30, 1982.

Robert L. Ackerly, Washington, D. C., for Systems and Applied Science Corp.

Mose Lewis III, and R. Michael LaBelle, Washington, D. C., for Unified Industries, Inc.

Lawrence R. Sidman and Nancy Lynn Hiestand, Washington, D. C., for Rehab Group, Inc., et al.

Judith Bartnoff, Asst. U. S. Atty., Washington, D. C., for James Sanders, Small Business Admin., and the United States.

Thomas Williamson, Washington, D. C., for intervening defendant Computer Data Systems, Inc.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

Plaintiffs in these consolidated cases are all participants in the Small Business Administration's (SBA) Section 8(a) minority small business and capital ownership development program, 15 U.S.C. § 637(a), 13 C.F.R. Part 124, which have been found in size reviews under 13 C.F.R. Part 121 to be other than small, but have not been afforded a full hearing on the record in accordance with the Administrative Procedures Act, 5 U.S.C. §§ 554–557. The single issue in these cases is whether, under these circumstances, SBA may refuse to award § 8(a) contracts to plaintiffs on the basis that they have been found to be other than small.

The section 8(a) program, originally a response to the 1967 report of the Commission on Civil Disorders, is intended to increase the level of business ownership by minorities so that they have a better opportunity to become an integral part of the free enterprise system. S.Rep.No.1070, 95th Cong., 2d Sess. 1, *reprinted in* 1978 U.S. Code Cong. & Ad.News 3835, 3836. The operation of the program involves SBA contracting directly with a federal procuring agency to supply goods or services, and then subcontracting on a sole source basis to a small business owned by a socially or economically disadvantaged person. Until 1978 the program was operated under SBA's general authority to enter contracts with government agencies and arrange for their performance by letting subcontracts to small businesses. The reservation of contracts for socially or economically disadvantaged concerns was an administrative practice without specific statutory guidance. In 1978, Congress amended the Small Business Act to codify the program and correct what it perceived as its weaknesses and failings. Management assistance to 8(a) firms was increased in the hope that the unacceptably low number of such firms that had as yet left the program and succeeded in the competitive market could be increased. *Id.*, S.Rep.No.1070 at 8, 1978 U.S.Code Cong. & Ad.News 3842. To correct perceived inequitable determinations of eligibility under the administrative program, section 8(a) itself was amended to provide objective criteria for eligibility for the program, *Id.*, S.Rep.No.1070 at 15, 1978 U.S.Code Cong. & Ad.News 3849; 15 U.S.C. § 637(a)(4)–(7) (Supp. IV 1980). A socially and economically disadvantaged small business concern is defined as one which is at least 51 per cent owned by one or more socially and economically disadvantaged individuals, and whose management and daily business operations are controlled by one or more such individuals. 15 U.S.C. § 637(a)(4). Socially disadvantaged individuals are defined as those who have been subject to racial or ethnic prejudice or cultural bias. 15 U.S.C. § 637(a)(5). Economically disadvantaged individuals are defined as those socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged. 15 U.S.C. § 637(a)(6). In addition to these requirements, eligibility for the 8(a) program depends upon a finding by the Administrator that with contract, financial, technical, and management assistance, the concern can perform contracts which may be awarded, and has reasonable prospects for success in competing in the private sector. 15 U.S.C. § 637(a)(7). These eligibility determinations, with the exception of

whether a group has been subject to prejudice or bias such that its members will be considered socially disadvantaged, which is to be made by the Administrator, are to be made by the Associate Administrator for Minority Small Business and Capital Development (AASMB–COD). 15 U.S.C. § 637(a)(8). Following these provisions concerning eligibility for the program is a section which deals with denial of assistance to concerns which have previously been deemed eligible. This provision lies at the heart of this dispute, and will be quoted in full.

> Within ninety days after the effective date of this paragraph, the Administration shall publish in the Federal Register rules setting forth those conditions or circumstances pursuant to which a firm previously deemed eligible by the Administration may be denied assistance under the provisions of this subsection: *Provided*, that no such firm shall be denied total participation in any program conducted under the authority of this subsection without first being afforded a hearing on the record in accordance with chapter 5 of Title 5.

15 U.S.C. § 637(a)(9). The regulations implementing § 637(a)(9), codified at 13 C.F.R. Part 124, provide that a business may leave the program either by completion, that is when the concern has achieved the goals set forth in its business plan and has attained demonstrated ability to compete in the market place without assistance under the 8(a) program, 13 C.F.R. 124.1–1(d); or by termination prior to completion for a variety of causes, including failure to continue to meet the eligibility standards for the program, repeated inadequate performance of contracts, violations of SBA regulations and reporting requirements, failure to reasonably pursue competitive and commercial business, and criminal convictions. 13 C.F.R. 124.1–1(e). In either case a hearing on the record is provided at the option of the firm. The procedures for adjudicative proceedings to be used in effecting the completion or termination of a section 8(a) business concern are set out in detail at 13 C.F.R. 124.10.

The Small Business Act was further amended in 1980 to, among other things, require that a fixed graduation date be set in the business plan of each concern participating in the 8(a) program. P.L. 96–481, 15 U.S.C. § 636(j)(10)(A)(i). The statute provides that these determinations, called fixed program participation terms (FPPTs), shall not be considered a denial of total participation for the purposes of section 637(a)(9), that is, they do not require an APA hearing.

In May 1981, SBA directed that regional administrators initiate Part 121 reviews of a list of 50 of the largest 8(a) participants to determine whether they were in fact still small, and therefore meeting the eligibility requirements of the program. Termination or completion proceedings were to be instituted against those firms found large. Unlike termination or completion proceedings under 13 C.F.R. Part 124, which are pertinent only to the 8(a) program, size determinations under Part 121 apply to all small businesses. For the purpose of 8(a) contracts, the size standards for Government procurement apply. 13 C.F.R. 121.3–8. All parties agree that 8(a) concerns are subject to the Section 121 size standards and size review procedures applicable to all small businesses, with the exception that plaintiffs and SBA argue that an extra layer of review is to be accorded 8(a) firms. Size determinations are made by the regional director, and may be appealed to the Size Appeals Board. 13 C.F.R. § 121.3–4, 3–6. All plaintiffs here have been found other than small either by their regional directors, or at both the regional and Size Appeals Board levels, but have not been accorded an APA hearing on the record.

SBA's stance concerning companies in plaintiffs' position is that they are still full participants in the 8(a) program until officially terminated after being provided the option of a hearing on the record. Such firms are eligible for contracts, although SBA retains the discretion in regard to these and all 8(a) firms as to whether to award any particular contract to any concern. Size may play a role in this discre-

tion. For example, SBA might decide to give the contract to a smaller 8(a) firm which needs the support more than a larger one, or in accordance with a plan to wean a relatively successful concern from the 8(a) program, SBA may decide that it has already supplied enough contract support to that firm for the year. Until June of this year, SBA practiced this policy, and plaintiffs remained eligible, and in some cases received, new 8(a) contracts even after their adverse size determinations. On June 16, 1982 the General Accounting Office (GAO) rendered a decision concerning the protest of the award of a contract to plaintiff Systems and Applied Sciences Corporation (SASC). In the Matter of Computer Data Systems, Inc., File B–205521. The GAO found that although SASC was entitled to a hearing on the record prior to termination from the 8(a) program due to size, it should not receive the contract which was the subject of the protest, and should be suspended from further 8(a) contracting unless the adverse size determination were formally reversed. In response to this decision, which SBA felt constrained to follow, despite its continuing contrary position, all regional directors and procuring agencies were notified by SBA that 8(a) concerns which had been the subject of adverse size determinations should not be considered for further contracts.

Plaintiff SASC brought the first of these actions. On July 1, 1982 this Court entered a temporary restraining order requiring SBA to treat plaintiff as a full participant in the 8(a) program unless and until the procedures required by 13 C.F.R. Part 124 for completion or termination were completed. At that time, the Court had before it two parties with essentially the same legal position, except as to the propriety of SBA's actions to comply with the GAO decision. Subsequently, two parties with an adverse legal position to both plaintiff and SBA sought to intervene. Computer Data Systems, Inc. (CDSI), the protestant in the GAO decision, was granted intervention as a party defendant as of right. Planning Research Corporation, (PRC), the incumbent contractor on the contract which was the subject of the GAO decision, was granted status as amicus curiae. Plaintiffs in the other two consolidated cases, although in basic agreement with plaintiff SASC's legal position, have filed additional papers to expound their reasoning. All parties agreed that all pleadings, however denominated, would be considered arguments on the merits, and a final hearing on the merits was held July 16, 1982.

To summarize the positions of the parties, plaintiffs and SBA argue that 8(a) concerns remain full participants in the program until termination or completion pursuant to the procedures provided at 13 C.F.R. 124 or until the expiration of their fixed terms. Defendant-intervenor and amicus argue that plaintiffs, as businesses which have been found to be other than small, do not qualify for any assistance under the 8(a) program, for which status as a small business is a prerequisite. According to their analysis, 15 U.S.C. § 637(a)(9) providing for a hearing on the record prior to denial of assistance applies only to the determinations concerning social and economic disadvantage outlined in § 637(a), which are eligibility factors peculiar to the 8(a) program. Questions concerning size are to be decided by the same procedures as are applicable to non–8(a) concerns provided at 13 C.F.R. 121. In accordance with those regulations, a concern found to be other than small in a formal determination by the regional director is immediately ineligible for any assistance under the Small Business Act or Small Business Investment Act of 1958 under the relevant size standard. 13 C.F.R. § 121.3–4(d). The regulations also provide that decisions of the Size Appeals Board shall be "final." 13 C.F.R. § 121.3–6(a). Defendant-intervenor and amicus argue that SBA has exceeded its authority in promulgating the regulation at 13 C.F.R. § 121.3–17, which provides that in the case of 8(a) firms, "[s]ize determinations under Part 121 on initial entry into the 8(a) program or on program completion or termination are advisory to the ASMSB–COD; and/or to the Administrative Law Judge in 8(a) proceedings under Part 124," because

the regulation as currently interpreted allows continued 8(a) contract support to firms found other than small under the Part 121 procedures. Alternatively, defendant-intervenor and *amicus* urge the conclusion reached by GAO, that although plaintiffs are entitled to a hearing on the record on the issue of size before they can be completely excluded from the program, they may not be awarded contracts after an adverse size determination under Part 121. Under this theory, 13 C.F.R. § 121.3–17 means that the Associate Administrator retains discretion, and a hearing on the record is available, only upon, as the regulation states, initial entry or program completion or termination, and not with regard to the denial of particular contracts because of an adverse size determination. In this situation, it is argued, plaintiffs have not been denied total participation in the 8(a) program without a hearing in violation of § 637(a)(9), because they can still receive technical assistance under the program, perform existing contracts and options thereon, and remain eligible for contracts whose size standard they do not exceed.[1] If their adverse size determinations are ultimately reversed, they will resume eligibility for contracts in the category for which they were found other than small.

Unfortunately, Congress has not made its intent regarding the question presented here explicit, which appears to have resulted in a somewhat self-contradictory stance on the part of SBA. On the one hand it asserts that 8(a) participants must meet the size standards applicable to all concerns under the Small Business Act set forth in Part 121. On the other hand, SBA has taken the position that size determinations under part 121 are only advisory to the AAMSB–COD, and that it need not institute termination proceedings against a firm subject to an adverse size determination at all if factors other than size counsel that the concern

should remain in the program. See Defendant's Motion for Summary Judgment at 4–5; In the Matter of Computer Data Systems, Inc.—Reconsideration, File B–204421.3, B–205521.4 at 3 (July 26, 1982); *Cal Western Packaging Corp. v. Collins*, Civil Action No. 80–2548 (D.D.C., Defendant's Memo in Response to the Court's Order of July 28, 1981 at 3–6, filed September 28, 1981; Letter from Donald W. Farrell, Associate General Counsel, SBA, to Charles Kratzer, Office of General Counsel, GAO Re: Computer Data Systems, Inc. B–205521, dated March 15, 1982 and filed March 23, 1982). Further, while size determinations by regional directors are effective immediately, and decisions of the Size Appeals Board are final with regard to non-8(a) small businesses, 8(a) concerns are afforded additional procedural safeguards, during the pendency of which they remain eligible for contract assistance. Judging by the example of plaintiff SASC, whose petition for reconsideration of the Size Appeals Board was pending for ten months, and for whom an administrative hearing has not yet been scheduled, the interim time pending final determination can be substantial.

Neither the statutory language nor the legislative history resolves explicitly whether § 637(a)(9) was meant to apply to size determinations. However, without any indication in the legislative history whatsoever that it was *not* intended to apply to size determinations, we cannot interpret its broad language, providing that "no such firm shall be denied total participation in any program conducted under the authority of this subsection without first being afforded a hearing on the record...", to exclude any considerations of program eligibility, including size.[2] Moreover, there is language in the legislative history supporting this view. The Conference Report to the 1978 bill which enacted § 637(a)(9) states:

---

1. For example, plaintiff SASC does not dispute that it has exceeded the size standard for a services industry, but claims not to have exceeded the standard for a manufacturing concern. According to this argument, it could continue to receive 8(a) manufacturing contracts.

2. For 8(a) concerns, size is a matter of program eligibility, based upon the concern's "primary industrial classification." 13 C.F.R. § 121.-3(17)(a). It is not determined, as it is for non–8(a) concerns, with reference to particular procurements.

Finally, the conference substitute gives due process guarantees to all firms in the program. Once a firm is certified as eligible it cannot be terminated, graduated, *or in any other way* removed from participation in the program, without the opportunity for a full hearing on the record according to the terms of the Administrative Procedure Act at the option of the firm.

H.R.Rep.No.1714, 95th Cong., 2d Sess. 23, *reprinted in* 1978 U.S.Code Cong. & Ad. News 3897, 3884. (Emphasis added). The Senate's understanding of the program was reflected in its report on the 1980 Amendments, where it stated,

For firms that are admitted into SBA's 8(a) procurement and 7(j) capital ownership development programs, only three options are available for a firm to leave the program: (a) voluntary withdrawal; (b) termination proceedings; and (c) "graduation".

S.Rep.No.974, 96th Cong., 2d Sess. 18, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4970.

■ We therefore agree with the plaintiffs and SBA to the extent that prior to involuntary termination from the program for any reason, including size, except by expiration of the fixed program participation term, a hearing on the record must be provided. It is true that this means that Size Appeals Board decisions do not have the finality for 8(a) concerns that they do for other small businesses. We do not know with certainty why Congress provided procedural protections for 8(a) concerns not available to other small businesses with regard to size determinations. Perhaps it is because of the greater, programmatic, impact of a size determination on an 8(a) firm, perhaps it is because of the generally favored position afforded socially and economically disadvantaged concerns in the Act. In any case, it is clear that Congress did afford that extra protection.

■ We do not agree, however, that SBA has the discretion not to institute termination proceedings following an adverse decision on size, or not to terminate if the size

determination is not reversed. It is beyond doubt, and SBA admits, that small business status under the Act is an absolute prerequisite to participation in any of its programs, including the 8(a) program, and that the size standards delineated in 13 C.F.R. Part 121 apply to 8(a) concerns. What § 637(a)(9) affords 8(a) concerns is extra *procedural* protections regarding such determinations, not an exemption, at the discretion of SBA, from the size requirements. Congress could have legislated such an exemption, and SBA could have administratively created different size standards for 8(a) as opposed to non 8(a) concerns. Neither has done so.

■ The question still remains whether 8(a) concerns must be, as the GAO and the court in *Cal Western* decided, suspended from contracting after an adverse size determination and pending a final decision on termination. Without any specific guidance in the statute or legislative history on this point, we must decide the question based upon the overall purposes and policies of the statute and regulations. We conclude that contract assistance cannot continue after an 8(a) firm has formally been found other than small. First of all, the 8(a) program was intended to help *small* disadvantaged businesses become viable parts of the free enterprise system. Congress never intended firms which are not small to benefit from the program, and has repeatedly expressed concern that firms were staying in the program too long, and that too few were graduating into the market place. In 1978, an eligibility requirement that the firm have reasonable prospects for success in competing in the private sector was enacted, and an extensive technical and management assistance program was provided to complement the contract program so that firms could outgrow their need for contract support. In 1980, Congress, still not satisfied with the progress of 8(a) firms in completing the program, required fixed graduation dates for each firm. Congress conceived the 8(a) program as a means by which disadvantaged firms could enter the free market

place, making room for new firms to enter the program; not as an ongoing support system for a few firms. Since the number of available 8(a) contracts is limited, prolonged stays in the program by a few firms deprive other small and disadvantaged concerns of the possibility of receiving that support. Also, the letting of contracts on a sole source basis to 8(a) concerns makes those contracts unavailable to non–8(a) small businesses and large businesses. Obviously this is not justified where the previously eligible 8(a) firm is no longer a small business. The Senate Report on the 1980 Amendments to section 8(a) quoted Senator Morgan to the effect that:

> It has not been the goal of the program to keep certain firms on Government contracts forever. The ultimate goal of most minority firms is to get their operations going and then move off into successful competition in the private sector. The continued participation of a few firms, in the absence of some compelling need, only injures those other small businessmen who could enter the marketplace through the 8(a) program.

S.Rep.No.974, 96th Cong. 2d Sess. 22, 1980 U.S.Code Cong. & Admin.News 4953, 4974.

Therefore we know that while Congress wished to provide 8(a) concerns with a hearing on the record before termination, it also wished to move firms which no longer need it away from contract support as expeditiously as possible. It is contrary to the purposes of the Act to allow large firms to receive contract support pending a lengthy administrative procedure. Also, firms in plaintiffs' position have already received all the procedural safeguards afforded non–8(a) businesses before they are terminated from contract eligibility for being other than small. Consider the anomaly if two firms, one 8(a) and the other non–8(a) undergo the same size review procedures. The 8(a) firm, which is larger, is found to be other than small, while the non–8(a) firm is found to be small. Under the plaintiffs' and SBA's position, the 8(a) firm could receive contracts on a sole source basis, possibly depriving the truly small business of an opportunity to obtain that contract under the small business set-aside program. The large 8(a) firm's continued receipt of contracts could also deprive other 8(a) firms of those contracts, or prevent eligible firms from entering the 8(a) program at all.

While it is true that an 8(a) firm is deprived of all 8(a) contract support based upon a finding that it is other than small in its primary field of operation, while a non–8(a) firm can be found large in one category, and still apply for contracts in other categories, it is also true that the 8(a) firm could apply for contracts available to non–8(a) small businesses outside the category in which it was found to be large. Therefore, if an 8(a) firm is not eligible for new 8(a) contracts after an adverse size determination, it still has been afforded all the rights of a non–8(a) small business, and in addition, cannot be entirely terminated from the 8(a) program without a hearing on the record. Firms in plaintiffs' position have the right to complete existing contracts and obtain modifications and options on those contracts with the financial, technical and management support which Congress has found to be so important to the program.

Accordingly, we interpret the language in § 637(a)(9) to the effect that an 8(a) firm cannot be denied total participation in the program without a hearing on the record to mean that such a firm can be denied contract support, but not total participation in the program, and not, as plaintiffs and SBA argue, that such firms may not be denied any degree of participation at all. Further, based upon the statutory mandate to serve only small businesses and congressional policy regarding the 8(a) program as outlined above, we conclude the SBA does not have the discretion to award 8(a) contracts to firms which have been found other than small in a size review. This is the same conclusion that was reached by the GAO in the decision and reconsideration of the CDSI protest, and which was reached in the case of *Cal Western Packaging*. In the words of the Comptroller General:

> We agree that the size determination is not conclusive and that the ultimate arbi-

ters of SASC's size eligibility for the 8(a) program are the Associate Administrator and the Administrative Law Judge in termination proceedings. From this proposition, however, it does not follow that the Size Appeals Board size determination is utterly without effect. SBA officials with especial expertise in assessing compliance with size standards have determined, after affording SASC an opportunity to present facts and arguments, that SASC does not meet the size standard applicable to its principal business activity. To continue to award contracts under 8(a) in the face of such a determination raises serious questions concerning the SBA's compliance with the Act. The court in *Cal Western* recognized this and ruled that unless and until the final arbiters of the issue determine the firm to be small, further awards would violate the letter and spirit of the Small Business Act. Under the particular circumstances of this case, we believe that the logic of *Cal Western* is controlling.

In the Matter of Computer Data Systems, Inc.—Reconsideration, File B–205521.3, B–205521.4 at 6 (July 26, 1982). Although plaintiffs and SBA claim that *Cal Western* is distinguishable on various grounds, we find its broad language to encompass these cases.

> This provision [§ 637(a)(9)] is designed to insure that a company is not permanently excluded from the 8(a) program until a hearing is held. However, it does not require the agency to continue to award contracts to a company which has been found in violation of the size standards. If the company is ultimately exonerated, contract awards may resume, but until then a company which is not a small business may not receive awards on the theory that it is. Thus, the company is not denied total participation in the 8(a) program; it is simply temporarily suspended until its eligibility can be finally determined. Any other result would violate both the letter and the spirit of the statute by allowing businesses which are not small to gain the benefits of the 8(a) program.

*Cal Western Packaging Corp. v. Collins,* Civil Action No. 80–2548 (D.D.C. decided April 20, 1982). Even if *Cal Western* were distinguishable, as the preceding discussion indicates, the conclusion in these cases has been reached upon independent examination of the issue.

■ Plaintiffs and SBA claim that the denial of new contract support without a hearing on the record is a constitutional violation of due process of law. However, a trial-type hearing is rarely required prior to the termination of governmental benefits. All that is required is "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). SBA size determinations require notice to the affected business, and in fact are based primarily on facts and allegations supplied by the parties (the concern whose size is under question and any protestants involved in the proceeding). The burden is on the concern whose size is under consideration to submit full information to SBA to establish its small business size. 13 C.F.R. § 121.3–4(c). Thus, plaintiffs had notice of the size review, and an opportunity to make written submissions to defend their size status. Basic due process protections are provided before any contract support is denied on the basis of size eligibility. Then, in the case of all small businesses, after contract support has been withdrawn, there is a right to appeal to the Size Appeals Board. The Size Appeals Board considers the appeal based upon written submissions, or in its discretion, conducts an oral inquiry. 13 C.F.R. 121.3–6(e). Thereafter in the case of 8(a) firms only, there is an opportunity for a full evidentiary hearing on the record. Final agency decisions are appealable to the courts. *Oklahoma Aerotronics, Inc. v. United States,* 661 F.2d 976 (D.C.Cir.1981). Plaintiffs' due process rights have not been violated by the denial of 8(a) contract assistance after a formal size determination and pending a final decision on program termination.

584

Finally, this Court, at the time of the issuance of the temporary restraining order in the *Systems and Applied Sciences* case predicted that plaintiff had a strong likelihood of success on the merits. Also, in an earlier case, *Amex Systems, Inc. v. Cardenas*, 519 F.Supp. 537 (D.D.C.1981), this Court remarked that in some future case, a plaintiff might be able to establish that it was impermissibly denied an 8(a) contract because it was undergoing a size review. (The stage of the size review in such a hypothetical case was not specified). In both of those instances, the Court only had parties before it which were aligned on this issue. Until CDSI and PRC were granted defendant-intervenor and *amicus* status, respectively, no participant before this Court had expounded the position that new contracts should be unavailable to 8(a) concerns which were the subject of adverse size determinations. The Court has also been provided, since the issuance of the temporary restraining order, with the more extensive reasoning supporting the GAO decision in the CDSI protest in GAO's reconsideration of that opinion. With the benefit of further briefing, oral argument, and additional research, today's conclusion was reached.

An appropriate judgment accompanies this memorandum opinion.

## JUDGMENT

In accordance with the Memorandum Opinion filed this date, it is this 30th day of July, 1982 hereby

ORDERED, that the motions for permanent injunctive relief of plaintiffs Systems and Applied Sciences Corporation, Unified Industries, Incorporated, Rehab Group, Inc., A. L. Nellum & Associates, International Business Services, Inc., Sterling Systems, Inc., and High Life Helicopter, Inc. be and they hereby are denied, and it is

FURTHER ORDERED, that the motion of plaintiffs Rehab Group, Inc., A. L. Nellum & Associates, International Business Services, Inc., Sterling Systems, Inc., and High Life Helicopter, Inc. for summary judgment be, and it hereby is, denied, and it is

FURTHER ORDERED, that summary judgment be entered in favor of defendants James C. Sanders, Administrator, U. S. Small Business Administration and the United States and against plaintiffs Systems and Applied Sciences Corporation, Unified Industries, Incorporated, Rehab Group, Inc., A. L. Nellum & Associates, International Business Services, Inc., Sterling Systems, Inc., and High Life Helicopter, Inc., and it is

FURTHER ORDERED, that the motion of defendant-intervenor Computer Data Systems, Inc. to dismiss be, and it hereby is, denied. That motion was treated instead as a brief on the merits.