106 F.3d 401
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NORTH AMERICAN GROUP, INC.; Kelly Sullivan; and Joseph
Boisture, Plaintiffs-Appellants,
v.
COUNTY OF WAYNE, Irvin I. Morehead, Glenn M. McBride, Edward
McNamara, Lester Robinson, Jack Dodge, and David
Katz, Defendants-Appellees.
Detroit Airport Advertising Company and Robert H.
Schollenberger, Defendants.
 No. 95-2268.
 United States Court of Appeals, Sixth Circuit.
 Jan. 28, 1997.
 
 Before: KENNEDY, JONES, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 The plaintiffs below--a corporation that had been certified and then decertified by defendant Wayne County, Michigan, as a disadvantaged business enterprise (DBE) and its two shareholders--appeal the district court's award of summary judgment to the defendants. The plaintiffs contended that Wayne County decertified the corporation because it was controlled by a white woman, in violation of the Equal Protection Clause's prohibitions of race and sex discrimination. We affirm.
 
 
 2
 * On March 5, 1991, Kelly Sullivan, a white woman, and Joseph and Daniel Boisture, two white men, formed Marketing Technologies, Inc. (MTI), with Sullivan as the majority shareholder, in the hope that MTI would qualify as a DBE under Department of Transportation regulations, 49 C.F.R. § 23.2 et seq. Sullivan and the Boistures had learned that the Detroit Airport Advertising Company (DAAC) needed to award a subcontract to a DBE in order to retain its primary contract with Wayne County. On March 13, 1991, MTI applied to Wayne County for certification as a DBE.[1] On April 19, 1991, Thomas Ferrebee, who at that time was the Director of Human Relations for Wayne County, certified MTI. Shortly thereafter, Robert Schollenberger, the president of DAAC, tentatively agreed to award a subcontract to MTI; however, he declined to sign a letter of intent until Wayne County approved the contract.
 
 
 3
 Wayne County never approved that contract. Sullivan alleges that Lester Robinson, the Deputy Director of Detroit Metropolitan Airport, informed her that the County Commission would not approve a contract for a corporation whose DBE status was based on ownership by a white woman, and that the county administration would not recommend a contract to the Commission that the Commission would not approve. Sullivan also alleges that in a July 9, 1991, meeting, David Katz, the Deputy Wayne County Director, told her, "White women don't mean shit in Wayne County," and that therefore MTI's contract would not be approved.
 
 
 4
 Joseph Boisture entered into several business ventures with Harvey Phelps, an African-American man, over the summer and fall of 1991. At the time, Phelps was the president of North American Communications of Michigan. On January 8, 1992, Sullivan, Joseph Boisture, and Phelps formed North American Group, Inc. (NAG). Phelps owned 47.5% of the stock, Sullivan 5%, and Boisture the remaining 47.5%, thereby establishing majority-minority ownership, and Phelps was elected president. At the time of its formation, NAG was a start-up company with no contracts and no assets; the shareholders paid a total of $100, or $1 per share, into the corporate treasury for their stock. On February 28, 1992, Wayne County's new Director of Human Relations, Irvin J. Morehead, certified NAG as a DBE. On August 21, 1992, after several months of negotiations, DAAC agreed to award NAG a subcontract, and the County Commission approved the subcontract on September 10.
 
 
 5
 Phelps's relations with Sullivan and Boisture became contentious during the course of 1992. NAG alleges that Phelps, who had for the most part been NAG's sole negotiator with Wayne County and DAAC, engaged in self-dealing. On December 1, 1992, Phelps wrote a letter to Sullivan and Boisture stating that he was resigning, but that he would retain his stock until further notice. On December 7, Phelps wrote a letter to Schollenberger stating that he had resigned, and that NAG no longer qualified as a DBE. On December 10, Glenn McBride, the Department Manager of the Wayne County Human Resources Division, wrote a letter to NAG informing it erroneously that it had been decertified. Although that decertification was subsequently rescinded, McBride wrote a letter to Sullivan on February 2, 1993, stating that Wayne County would conduct an investigation to determine whether NAG continued to qualify as a DBE.
 
 
 6
 On January 15, 1993, Sullivan was elected president of NAG by a majority vote of the board of directors. Six days later, NAG settled the lawsuit that it brought against Phelps in the Wayne County Circuit Court, the settlement agreement provided that both parties would release their claims against each other, including NAG's claim for repayment of a loan to Phelps for $11,600, and that Phelps would surrender his stock to NAG and agree not to compete against NAG and not to disclose corporate secrets. The minutes for the meeting of the board of directors on February 12, 1993, reflect that Phelps assigned 46 of his 47.5 shares to Sullivan, and the remaining 1.5 shares to Boisture. The minutes also state that the price of the shares was "to be determined in the very near future." However, Phelps did not actually execute the assignment to NAG until March 4, 1993, the plaintiffs produced a receipt that reflects that, on March 15, 1993, Sullivan paid $92 and Boisture paid $3--or $2 per share--into the corporate petty cash fund for receipt of Phelps's stock from the corporate treasury.[2]
 
 
 7
 On February 19, 1993, pursuant to his February 2 letter, McBride conducted an on-site review of NAG. At that review, Sullivan offered McBride a notebook of corporate documents. McBride selected certain documents for his file, but declined to take the entire notebook. McBride requested NAG to produce certain additional documents, including copies of stock certificates. Sullivan provided McBride with the requested documents on March 4. On March 8, 1993, Wayne County decertified NAG as a DBE. In July 1993, after the expiration of a state court restraining order that was kept in effect by the federal court. DAAC terminated NAG's subcontract.
 
 
 8
 The plaintiffs filed their complaint challenging the decertification on equal protection and due process grounds in the Wayne County Circuit Court. The defendants removed the action to the United States District Court for the Eastern District of Michigan, and moved for summary judgment. The district court granted that motion, and the plaintiffs now appeal. They raise four issues on appeal. First, they argue that disputed questions of material fact existed, and therefore summary judgment was improper, on their claim under 42 U.S.C. § 1983 for race and sex discrimination in violation of the Fourteenth Amendment. Second, they argue that summary judgment was similarly improper on their claim that they were not afforded the process due them under the Fourteenth Amendment before NAG was decertified. Third, they argue that summary judgment was improper on their state law claims of negligence and intentional interference with a business relationship. Finally, they argue that the district court should have declined to exercise supplemental jurisdiction over their due process claim under the Michigan Constitution. We consider each issue in turn; we review the first three issues de novo, see Russo v. City of Cincinnati, 953 F.2d 1036, 1041-42 (6th Cir.1992), but we review the fourth issue only for an abuse of discretion, see Taylor v. First of America Bank-Wayne, 973 F.2d 1284, 1288 (6th Cir.1992).
 
 II
 
 9
 In order to obtain federal funding for the Detroit Metropolitan Airport, Wayne County must comply with the requirements of the Airport and Airway Improvement Act of 1982, 49 U.S.C. § 2201 et seq., including a requirement that it spend at least 10% of the federal funds received under that Act on contracts with DBE's. 49 U.S.C.App. § 2204(d)(1). A business can be certified as a DBE if it demonstrates that it is owned or controlled by women or "bona fide minority group member[s]," and the Secretary of Transportation has promulgated a regulation that specifies the criteria for proof of ownership or control by such persons. 49 C.F.R. § 23.53(a). The plaintiffs concede that they must demonstrate that they qualify as a DBE in order to succeed on their equal protection claims. See Vaughn v. United States Small Bus. Admin., 65 F.3d 1322, 1328 (6th Cir.1995) (no discriminatory purpose for denial of DBE certification where plaintiff failed to meet criteria); Fagan v. United States Small Bus. Admin., 783 F.Supp. 1455, 1464 (D.D.C.) (same), aff'd, 19 F.3d 684 (D.C.Cir.1992). Wayne County argues that, even if there is a genuine issue of material fact as to the discriminatory intent of its officials, the plaintiffs' race and sex discrimination claims must fail because NAG did not meet the requirements of that regulation.
 
 
 10
 Section 23.53(a) sets forth several factors to be considered in determining whether a business is truly minority- or woman-owned. Among other requirements, in order to receive certification,
 
 
 11
 [t]he contributions of capital or expertise by the minority or women owners to acquire their interests in the firm shall be real and substantial. Examples of insufficient contributions include a promise to contribute capital, a note payable to the firm or its owners who are not socially and economically disadvantaged, or the mere participation as an employee, rather than as a manager.
 
 
 12
 49 C.F.R. § 23.53(a)(6). A certified business's status as a DBE is subject to review after any change in ownership. 49 C.F.R. § 23.53(f). Therefore, in order to demonstrate that NAG qualified as a DBE, the plaintiffs must show that Sullivan made a "real and substantial" contribution either of capital or of expertise in exchange for the receipt of stock from the corporate treasury.
 
 
 13
 The plaintiffs can demonstrate neither, and therefore their equal protection claims fail. With respect to capital, the undisputed facts show that Sullivan paid for the stock, at the earliest, on March 15, 1993. As of March 8, 1993, the date on which NAG was decertified, Sullivan had only made "a promise to contribute capital" in exchange for her stock, and such promises are specifically excluded from the definition of an acceptable capital contribution under § 23.53(a)(6). Indeed, she even may not have made that promise as of March 8. NAG never attempted to value the stock before the transfer, and the only contemporaneous document that reflects a $2 per share valuation is the March 15 receipt; therefore, as of the date of decertification, Sullivan had not committed herself to pay any particular price in exchange for the stock.[3]
 
 
 14
 With respect to expertise, the plaintiffs argue that Sullivan's receipt of stock is justified by the fact that Sullivan has contributed significantly to the business operations both of MTI and of NAG. However, in order to qualify as a DBE, it is not sufficient for the minority or woman owner simply to contribute expertise to the business; in addition, the expertise must be contributed specifically for the purpose of acquiring an ownership interest. 49 C.F.R. § 23.53(a)(6). The plaintiffs have not alleged that Sullivan did so, nor have they provided any documentation to Wayne County that would tend to demonstrate that the shares were received in consideration for the contribution of expertise.[4] The undisputed facts demonstrate that Sullivan did not make any effort to prove to Wayne County that she made a "real and substantial contribution" either of capital or of expertise in exchange for her shares. Therefore, the undisputed facts also demonstrate that NAG did not qualify as a DBE under 49 C.F.R. § 23.53(a). Consequently, despite the plaintiffs' allegations that Wayne County officials intended to discriminate against them, their claims under the Equal Protection Clause fail.[5]
 
 III
 
 15
 The plaintiffs argue that, in decertifying NAG as a DBE, Wayne County did not afford them the process due under the federal Constitution. In order to succeed on this claim, the plaintiffs must demonstrate both that they had a property interest in DBE certification, and that the Fourteenth Amendment requires procedural protections for the deprivation of that interest beyond those that they received. The plaintiffs would have had a property interest in DBE certification if they had a "legitimate claim of entitlement" to its continued possession. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). We assume, without deciding, that the plaintiffs had such a claim of entitlement. Compare Baja Contractors, Inc. v. City of Chicago, 830 F.2d 667, 676-77 (7th Cir.1987) (plaintiff had property interest in DBE certification under 49 C.F.R. § 23.53, where decertification was treated as a restriction of an earlier grant), with Cornelius v. LaCroix, 838 F.2d 207, 211 (7th Cir.1988) (plaintiff had no property interest in certification under state DBE program where certification was granted, "if at all, on a contract by contract basis"); but see 49 C.F.R. § 23.53(f) (DBE must update application annually or upon change of ownership).
 
 
 16
 However, the plaintiffs received all the process that they were due for that property interest. They assert that the Fourteenth Amendment required Wayne County to afford them certain procedures suggested, but not required, by the Department of Transportation for decertification--notice in writing, the opportunity to respond in person and in writing, and a written explanation of the reasons for the decision. 49 C.F.R. Pt. 23, Subpt. D, App. A. Assuming this argument to be correct, the plaintiffs were, in fact, afforded those procedures.[6] McBride provided NAG with a copy of the relevant regulation, informed NAG in writing of the elements of proof needed to retain certification, and requested documentation. McBride afforded NAG the opportunity to present documentation both in person at the on-site inspection and subsequently in writing, and NAG received a written explanation of the reasons for the decertification both from the Wayne County Human Relations Division and from the DOT.
 
 
 17
 The plaintiffs focus their due process claim on the allegation that McBride declined to take the entire binder of proffered documents with him at the conclusion of the on-site inspection. However, at no point do the plaintiffs allege that those documents were in fact relevant to the issue of Sullivan's contribution of capital or expertise. After the on-site inspection, Wayne County asked NAG to supply it with additional documentation regarding that contribution; those additional documents again did not include any information that would be relevant on that issue. NAG's due process claim therefore fails.
 
 IV
 
 18
 The district court properly awarded summary judgment on both the claim of intentional interference with a contractual relationship and the claim of negligence. The first claim requires the plaintiffs to demonstrate that the instigation of the termination of a contractual relationship was "without justification" and "unjustified in law." Jim-Bob, Inc. v. Mehling, 443 N.W.2d 451, 462 (Mich.Ct.App.1989). Under Michigan's sovereign immunity statute, the plaintiffs may recover on a claim of negligence against a public entity only if they show "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich.Comp.Laws § 691.1407(2)(c). Wayne County's compliance with the requirements of federal law establishes a defense to both claims.
 
 V
 
 19
 Finally, the plaintiffs argue that the district court abused its discretion by deciding its state due process claim. They argue that the text of the Michigan Constitution differs materially from the parallel due process provision of the federal Constitution in that it establishes a right "to fair and just treatment in the course of legislative and executive investigations and hearings," Mich. Const. of 1963, art. I, § 17, and that therefore the district court was required to dismiss the claim without prejudice, as the claim "raises a novel or complex issue of state law," 28 U.S.C. § 1367(c). However, the Michigan courts have held that art. I, § 17, affords no greater procedural protections than those afforded by the federal Constitution. See Gora v. City of Ferndale, 551 N.W.2d 454, 458 (Mich.Ct.App.1996); Saxon v. Department of Soc. Servs., 479 N.W.2d 361, 366 (Mich.Ct.App.), appeal denied, 479 N.W.2d 352 (Mich.1991). Because the plaintiffs received all the process to which they were entitled under the federal Constitution, their state due process rights were also satisfied. The state law claim therefore was not overly "novel or complex," and the district court did not err in choosing to decide it on its merits.
 
 VI
 
 20
 The district court's order of summary judgment is therefore AFFIRMED.
 
 
 
 [1]
 Department of Transportation regulations provide that the responsibility to certify a business as a DBE lies in the first instance with the body that receives the federal funds. 49 C.F.R. § 23.51(a)
 
 
 [2]
 The defendants dispute that payment was actually made on that day, if at all, and Sullivan conceded in her deposition that the payment could have been made later than March 15. However, on review of an award of summary judgment, we resolve disputes of material fact in the non-movant's favor
 
 
 [3]
 The defendants also dispute whether the stock was truly worth $2 per share, given the facts that there is no documentation that explains that valuation, that NAG alleges that the DAAC subcontract was worth "millions of dollars," that NAG also had contracts with Ameritech and with Michigan State University which the defendants allege were profitable, and that NAG had grossed $186,000 in the previous year. We note that evidence of the value of the shares could be provided by the value that Phelps received in exchange for surrendering them. Under the terms of the settlement agreement, the shares value could be described as equal to the value of NAG's claims against Phelps, less the value of Phelps's claims against NAG and less the value of the non-compete and non-disclosure agreements. However, because the record does not describe the value of those other components of the settlement agreement, because there is a dispute of material fact as to the value of the DAAC contract in 1993 given the unlikelihood that NAG would retain it, and because there is no evidence in the record of NAG's net proceeds for any year, we rest our affirmance of the award of summary judgment solely on Sullivan's failure to pay
 
 
 [4]
 The Department of Transportation has interpreted § 23.53(a)(6) to require an applicant for DBE certification, if the claim of ownership rests on an alleged contribution of expertise, to provide contemporaneous documentation that recites that ownership was acquired in consideration for expertise and that attaches a monetary value to that expertise. See Letter from William T. Hudson, Director of Civil Rights, U.S. Dep't of Transp., to Margery Newman at 2 (date illegible) [JA 1668; R. 190, Ex. 51, Ex. A]. The Department's interpretation of its own regulation is reasonable, and consequently we are bound to defer to it. See Lyng v. Payne, 476 U.S. 926, 939 (1986)
 
 
 [5]
 Our disposition of the race and sex discrimination claims on de novo review of an award of summary judgment renders it unnecessary to consider the effect of the plaintiffs' unsuccessful appeal of their decertification to the Department of Transportation, pursuant to 49 C.F.R. § 23.55(a). The plaintiffs did so in September 1993, after the filing of the complaint in this matter. The Department of Transportation rejected their appeal on March 23, 1994, based on, among other grounds, a finding that Sullivan did not satisfy the requirement of a "real and substantial" contribution of capital or expertise under § 23.53(a)(6). The plaintiffs were entitled to appeal that decision to the district court under 5 U.S.C. § 706(2), see Car-Mar Constr. Corp. v. Skinner, 777 F.Supp. 50, 51 (D.D.C.1991), but did not do so. The defendants have not asserted that the plaintiffs' suit was barred by their failure to exhaust an available administrative remedy, but instead have asserted that the Department's ruling constitutes claim preclusion. Whatever the res judicata effect of that ruling may be, for the reasons explained in the text, the plaintiffs cannot succeed on their equal protection claims
 
 
 [6]
 To the extent that the plaintiffs challenge the erroneous summary decertification in December 1992, that challenge fails, as they were immediately recertified and they suffered no injury from that adverse action