**NEUMA CORPORATION, Plaintiff,**

v.

**James ABDNOR, Administrator, Small Business Administration, Defendant.**

Civ.A. No. 89–0123.

United States District Court, District of Columbia.

April 4, 1989.

Frederick A. Douglas and Melvin L. Doxie, Leftwich, Moore & Douglas, Washington, D.C., for plaintiff.

Sharon A. Cohen, Asst. U.S. Atty., and Mark Stephens, Trial Atty., U.S. Small Business Ass'n, Washington, D.C., for defendant.

## OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

In this action, plaintiff Neuma Corporation seeks judicial review of a ruling by the Small Business Administration (SBA) that Neuma was not eligible for participation in an SBA program for emerging minority businesses. For the reasons outlined below, the Court finds no error in the SBA's decision and will enter summary judgment in favor of defendant.

### I. The Statutory and Regulatory Background

Section 2[8](a) of the Small Business Act of 1958, 15 U.S.C. § 637(a), established a special program designed to benefit "socially and economically disadvantaged" small business concerns. The Act authorizes SBA to enter into procurement and construction contracts with any federal agency. The SBA then subcontracts with qualifying small businesses, which actually provide services directly to the procuring agency. *Id.* § 637(a)(1). The goal of the 2[8](a) program is, as this Court has noted, "to increase the level of business ownership by minorities so that they have a better opportunity to become an integral part of the free enterprise system." *Systems*

*and Applied Sciences Corp. v. Sanders,* 544 F.Supp. 576, 577 (D.D.C.1982).

In addition to demonstrating that it is socially and economically disadvantaged, 15 U.S.C. § 637(a)(4) & (5), a small business seeking eligibility in the 2[8](a) program must show that its business meets minimum competence levels. The Act provides:

No small business concern shall be deemed eligible for any assistance pursuant to this subsection unless the Administration determines that with contract, financial, technical, and management support the small business concern will be able to perform contracts which may be awarded to such concern ... and has reasonable prospects for success in competing in the private sector.

*Id.* § 637(a)(7). Although the SBA's regulations do not elaborate on the statutory language, *see* 13 C.F.R. § 124.107, additional guidance is provided in the agency's Standard Operating Procedure (SOP) 80–05.[1] In discussing the "reasonable prospects for success" standard, it states:

(a) The disadvantaged individual(s) upon whom eligibility is based must demonstrate adequate business experience, abilities, and/or educational background directly related to the applicant concern's business activity.

(b) A determination shall be made that the individual(s) upon whom eligibility is based currently has demonstrated management skills sufficient to manage the applicant concern.

(c) A determination shall be made that an applicant concern's existence as a business entity is not contingent upon acceptance into the 8(a) program.

SOP 80–05 at 55–56. The SBA also requires that applicants be in business for two years prior to entry into the program:

Generally, in order to be considered to possess the requisite "potential for success" needed to be eligible to participate in the section 8(a) program, an applicant concern must have been in business for

two full years as evidenced by income tax returns.

*Id.* at 56. This requirement is not inflexible; an exception to the rule provides:

However, in extraordinary circumstances, an applicant concern which has not been in business for two full years may be eligible to participate in the 8(a) program, provided that the regional administrator determines that the individual(s) upon whom eligibility is based has (have) outstanding business experience and management skills directly related to the applicant concern's business activities.

*Id.*

## II. The Instant Case

Plaintiff Neuma Corporation is a minority-controlled engineering consulting firm. Acting through its president, Horace G. Jones, Neuma submitted its 2[8](a) application to the SBA in September 1987. After several levels of agency review, Neuma was informed on July 29, 1988 that its application had been denied. *See* Administrative Record (AR) 3–4. Two reasons for the decision were given. The SBA first noted that Neuma "lacked the necessary financial resources to perform successfully at the levels projected in the business plan." In addition, the agency observed that Neuma had not been in business for two full years nor did it meet the exception allowing participation in certain "extraordinary circumstances." Neuma was informed that it could request reconsideration of the decision but that, if reconsideration were denied, it would be barred from tendering another application for twelve months after the decision denying its request. AR 4.

By letter dated August 10, 1988, Neuma requested reconsideration of the SBA's decision. AR 54–74. On December 14, 1988, the SBA denied the reconsideration request, noting that Neuma had failed to overcome the original reasons given for denial of its 2[8](a) application. AR 48. The agency concluded:

---

1. A complete copy of SOP 80–05, which is Exhibit A to defendant's dispositive motion, was filed on March 15, 1989.

Since you have utilized the one request for reconsideration allowed under Small Business Administration policy a re-application for the 2[8](a) program will not be accepted until twelve months from the date of this letter.

*Id.*

Neuma commenced this action against SBA Administrator James Abdnor on January 27, 1989.[2] In its complaint,[3] Neuma contends that SBA erred in denying its application because of its lack of financial resources and its inability to meet the two-year rule and that the twelve-month waiting period imposed by SBA before it can reapply for the 2[8](a) program is arbitrary and capricious. As relief, plaintiff seeks a declaratory judgment that it is an eligible 2[8](a) concern; monetary damages for its loss of revenue and profits resulting from its exclusion from the program; and an injunction against barring enforcement of the twelve-month waiting period. On February 8, 1989 Neuma moved for a temporary restraining order and a preliminary injunction. At a scheduling conference held that day, the parties agreed to forego these intermediate steps and, through accelerated proceedings, proceed to a prompt and final disposition on the merits. On March 9, 1989 defendant filed a motion to dismiss or, in the alternative, for summary judgment and, after briefing was completed, a final hearing was held on March 31, 1989.

### III. Discussion

#### A. *Governing Law*

Judicial review of agency action is governed by the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq.* The APA permits this Court to overturn only those agency decisions which are "arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law." *Id.* § 706(2)(A). The standard of review is a narrow one. "[A] court is not to substitute its judgment for that of the agency," *Motor Vehicle Manufacturers Association v.* *State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983), and should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transportation Inc. v. Arkansas–Best Freight System, Inc.,* 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974). At the same time, however, the reviewing court must be satisfied that the agency's decisionmaking was reasoned: that it "examine[d] the relevant data and articulated a satisfactory explanation for its action including 'a rational connection between the facts found and the choice made.'" *State Farm,* 463 U.S. at 43, 103 S.Ct. at 2866 (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962)). To that task the Court now turns.

#### B. *The SBA Decision*

As noted above, the SBA denied Neuma's 2[8](a) application, and rejected its request for reconsideration, for two reasons: (1) lack of financial resources to carry out its projected contract levels and (2) lack of two years' business experience. Having carefully examined the administrative record, the Court concludes that both of these determinations were supported by substantial evidence and that they were neither arbitrary nor capricious.

After Neuma submitted its application to the 2[8](a) program, the case was assigned to a Business Opportunity Specialist (BOS) in SBA's Washington, D.C. District Office, who conducted a review to determine Neuma's eligibility under SBA regulations and procedures and issued a report on January 15, 1988 recommending that the application be declined. *See* AR 11–12. The BOS noted three problems with respect to Neuma's financial condition. First, although Mr. Jones' personal net worth was $300,000, the net worth of his company was extremely small—only $2,832. AR 12. The BOS

---

**2.** For convenience, the Court will refer to Mr. Abdnor as "defendant" or "SBA."

**3.** Plaintiff filed an amended complaint on February 8, 1989 and, unless otherwise noted, all references will be to that document.

also observed that Neuma did not have a letter of credit from a bank and that, while Neuma did have a letter stating that the bank would provide loans called for in the firm's business plan, that letter was, in the words of the BOS, "very vague." *Id.* And, finally, because Neuma was a new firm without any contracts, the BOS found Neuma's contract support projections ($947,000 for 1988, $4,400,000 for 1989, $6,800,000 for 1990, and $9,000,000 for 1991) to be "totall[y] unrealistic." *Id.* He therefore concluded that Neuma "does not possess the financial capabilities to successfully perform 8(a) contracting." *Id.* The BOS also cited another reason for denying the application—the fact that Neuma had not been in business for two years as required by SOP 80–05.[4]

Both the Supervisor of the Processing Unit and the District Director concurred with the BOS's recommendation. AR 10. In particular, the Supervisor noted that the bank letter was "unacceptable" because the bank had failed to "state in an unequivocable manner the amount it will commit, and under what terms." *Id.* The application was then forwarded to the SBA's Regional and Central Offices for further review. Five separate officials concurred in the original decision to deny Neuma's application. AR 8. On July 29, 1988 the Acting Associate Administrator for Minority Small Business & Capital Ownership Development informed Neuma that its application had been denied and that it could seek reconsideration of the decision.

Neuma did request reconsideration on August 10, 1988. *See* AR 54. With respect to its financial situation, Neuma stated that it had a $150,000 line of credit secured by the home of Mr. Jones; that its arrangement with its bank was "a usual and preferred method of financing" which it felt "fortunate" to have obtained; and that it did not believe its projected contract revenues to be unrealistic in view of its financing arrangements and its billings of $54,000 per month. AR 55. It therefore argued that it should not have been rejected based on its financial resources.

With respect to the "two years in business" rule, Neuma did not contend that it had been a going concern for the requisite period. Rather, it contended that (1) Mr. Jones had outstanding business and educational background; (2) that the company had sources of financing other than the 8(a) program; (3) that Mr. Jones had demonstrated management skills; and (4) that Neuma's existence was not contingent upon acceptance into the 2[8](a) program. In short, Neuma argued that its situation presented the sort of "extraordinary circumstance" that would satisfy the four criteria used by the SBA to grant waivers to the two-year rule. *See* AR 55–57.

Another BOS evaluated the reconsideration materials and arguments presented by Neuma. Although noting that Neuma's potential contract figures were "a little high," she concluded that the firm would have adequate financial resources if "an adjustment in these projections" took place. AR 51. The BOS recommended decline on the two-year issue, however, because she believed that Neuma "still does not possess ... exceptional management and technical expertise." *Id.* at 52. The Supervisor of the Processing Unit also noted that Neuma's ability to meet its contract projections was "questionable." AR 53. He differed from this BOS on the two-year rule, however, and recommended approval because "[t]he applicant has demonstrated, thru [sic] operations, that he has the management skills to perform on contracts and his technical background appears to be very strong." *Id.* The District Director disagreed on September 30, 1988 and recommended decline, citing four specific concerns: Neuma had received only one contract that represented the extent of its experience; demonstrated management skills were lacking because Mr. Jones had never run a small business; a cash flow problem ($7,000 was overdrawn) already existed; and Neuma's financial resources did not support a $4.4 million business plan. AR 53. Upon further review, SBA's Regional Office agreed that reconsideration should be denied, noting that Neuma had

---

4. Neuma was incorporated on May 28, 1987. *See* AR 136.

failed to overcome the two initial reasons given for the denial of its application. AR 50. Two officials in the Central Office concurred with this recommendation, *id.* at 49, and Neuma was informed on December 14, 1988 that its request for reconsideration had been denied. AR 48.

It is clear from this recitation that the SBA's decision was not arbitrary, capricious or unsupported by substantial evidence. Neuma's application for entry into the 2[8](a) program received a thorough and careful review by a number of officials within the SBA. After examining Neuma's submissions, the agency twice concluded that Neuma lacked financial resources to carry out its business plan and that it was not entitled to a waiver of the two-year rule.[5] The Court is therefore satisfied that the relevant factors were taken into account and that the agency's decision was supported by the materials in the record.

Neuma attacks each of the grounds asserted for denial of its 2[8](a) application. With respect to its financial resources, Neuma relies on additional information that the company submitted on October 24, 1988 in support of its reconsideration request which it claims shows that it was financially sound; it contended at oral argument that the SBA's decision is erroneous because that information was not before the District Director when he made his recommendation nor is there any mention of it in the subsequent decisions by Regional and Central Office officials. This argument is unpersuasive. For one thing, the fact that Neuma's supplemental materials were not mentioned does not mean that they were not taken into account by the Regional and Central Office. A presumption of regularity attaches to agency decisions, *National Small Shipments Traffic Conference, Inc. v. ICC,* 725 F.2d 1442, 1455 (D.C.Cir.1984), and Neuma's bare allegation that these materials were ignored does not meet its burden of showing invalid agency action.[6] Moreover, the material submitted by Neuma does not conclusively establish its financial viability. The October 24, 1988 submission was a revised estimate by Neuma of its contract projections for the years 1989–1994, but it nowhere explains the basis for Neuma's radical downward adjustment (from an original estimate of $4.4 million to just under $1 million for fiscal year 1989). *See* AR 109. Moreover, although the District Director had identified other problems with Neuma's application, such as the fact that the firm was relying on one large contract and that it had developed a cash flow problem, the projection sheet does not discuss these other aspects of the company's financial performance. Thus, even if Neuma *could* somehow show that its submission was not taken into account, it has failed to demonstrate that this material would have altered the agency's original decision.

Neuma's challenge to the SBA's decision on the two-year rule must also be rejected. At the February 8, 1989 scheduling conference the SBA agreed to discovery on this issue, even though discovery is generally unavailable in cases arising under the APA. *See, e.g., Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (per curiam). Defendant agreed to provide the number of exceptions granted by SBA to the two-year rule during the

---

**5.** The fact that the Supervisor of the Processing Unit reached a different conclusion with respect to the two-year waiver does not undercut the SBA's decision but rather shows that Neuma's application benefitted from a full ventilation of views within the agency.

**6.** It also bears mention that, although Neuma's original application was denied on July 29, 1988 and it timely provided its materials supporting its reconsideration application on August 18, 1988, it failed to provide the supplementary information until several months later, on October 24, 1988—well after Neuma had been informed, on October 3, 1988, that the District Office had completed its review and was forwarding the materials to the Regional Office. AR 82. SBA bore no obligation to consider the untimely supplementary material, since its July 29, 1988 notice denying Neuma's application cautioned plaintiff that, "[i]f you send timely notification of your intent to request reconsideration, you will have 60 days from the date of your notice to submit *all information and/or documentation necessary to overcome each specific reason for decline.*" AR 4. Neuma's notice was dated August 5, 1988, *see* AR 51, and its October 24, 1988 submission was therefore untimely.

last two years and the reasons for those exceptions. When filing its dispositive motion on March 9, 1989, however, the SBA attached as Exhibit B the Declaration of Francisco Marrero, Director of the 2[8](a) program, who noted that time constraints and administrative difficulties had combined to prevent SBA from providing the requested information. Mr. Marrero did provide the exact number of applications submitted and approved for the 2[8](a) program in general for 1987 and 1988 and he estimated, based on his familiarity with the 2[8](a) program, that the agency had granted a waiver of its two-year rule only 5% of the time.

Shortly before the March 31, 1989 hearing, the SBA moved for a protective order and to modify the informal discovery sought by Neuma. Defendant reiterated the problems it had encountered and noted that attempts at resolution of the problem had failed. As a compromise, defendant suggested that it would be willing, in addition to the material it had already provided, to determine the precise number of exceptions to the two-year rule during 1988 in SBA Region III (where Neuma is located). Because of the impending hearing and the Easter holiday recess, the Court ordered Neuma to submit an expedited response to the SBA's motion. When Neuma did not timely file its opposition, the Court granted SBA's motion by Order dated March 23, 1989, noting that it "agree[d] with the substantive reasons presented in defendant's motion." On March 24, 1989 SBA filed its response to the modified discovery request. It stated that only one of 80 approved 2[8](a) applications had been granted in Region III during 1988 in which the applicant had been in business less than two years and it provided the reasons for that ruling.

In its opposition, Neuma argued that summary judgment should not be entered in favor of SBA because, without the discovery that it sought, it could not prove that the agency's decision was arbitrary and capricious. In *Pitts*, the Supreme Court made clear that in APA cases "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." 411 U.S. at 142, 93 S.Ct. at 1244. Discovery is clearly the strictly-limited exception rather than the established rule, and Neuma has not submitted anything—such as bad faith on the part of SBA officials or inadequate fact-finding procedures—that would justify discovery in this case. Because Neuma received more in the way of discovery than it would ordinarily be entitled to, this argument must be rejected.

Abandoning this contention, Neuma asserted at oral argument that the denial of a waiver was arbitrary and capricious because no distinction could be drawn between it and the one firm that did receive a waiver of the two-year rule. The Court must disagree. Although Mr. Jones may have possessed similar technical and management expertise as the principal of the firm that received the waiver, that company had received $400,000 in financing from sources other than SBA, was performing three contracts and was low bidder on three others. Supplemental Declaration of Francisco Marrero ¶ 5. Neuma, however, was dependent on only one contract and had received only a $150,000 line of credit with its bank. Given that SBA's waiver is limited to "extraordinary circumstances" and that such waivers are in fact rarely granted, the Court cannot say that the SBA's decision was arbitrary or capricious.

### C. *Twelve–Month Rule*

Neuma also contends that the twelve-month waiting period between the denial of its request for reconsideration and its opportunity to file a new application for entry into the 2[8](a) program is arbitrary and capricious. This requirement is codified in the SBA's regulations at 13 C.F.R. § 124.206 and provides:

> The [responsible Associate Administrator] has final authority over approval or declination of applications for admission to the section 8(a) program. If the [Associate Administrator] declines an application, he or she will notify the applicant in writing giving detailed reasons for the decline and informing the applicant of the right to request a reconsideration

within 30 days of receipt of the decline letter ... If the application is declined by the [Associate Administrator] on reconsideration, no new application will be accepted within one year of the reconsideration decision.

Neuma argued at the hearing that it should not be penalized for seeking reconsideration of the SBA's decision denying its application by being forced to wait an additional 12 months before seeking admission to the program again. The Administrator of SBA, however, is authorized to "make such rules and regulations as he deems necessary to carry out the authority vested in him," 15 U.S.C. § 634(b)(6), and the twelve-month waiting period is an eminently reasonable means of assuring that the agency does not become inundated with repeated applications from disappointed applicants seeking entry to what is undoubtedly a popular program. In addition, no one forced Neuma to move for reconsideration. Rather, after being cautioned about the twelve-month waiting period, *see* AR 4, Neuma elected a calculated gamble and decided to take its chances with a request for reconsideration rather than reapplying to the program. The gamble did not succeed, and Neuma must now accept the consequences of its decision.

## IV. Conclusion

The Court finds no basis on which to disturb the SBA's decision denying Neuma admission to the 2[8](a) program. Neither the substantive grounds relied on for the denial, nor the twelve-month waiting period, is arbitrary, capricious or unsupported by the record. Summary judgment in favor of SBA is therefore warranted.[7]

For these reasons, it is

ORDERED that defendant's motion for summary judgment be and it hereby is granted and that plaintiff's motion for summary judgment be and it hereby is denied.

---

7. In light of this disposition, the Court need not reach defendant's argument that 15 U.S.C. § 634(b)(1) bars Neuma's claim. *But see San*

*Antonio General Maintenance, Inc. v. Abdnor,* 691 F.Supp. 1462, 1467 (D.D.C.1987) (Green, Joyce Hens, J.).