**Jane Austin FAGAN, et al., Plaintiffs,**

**v.**

**UNITED STATES SMALL BUSINESS ADMINISTRATION, Defendant.**

**Civ. A. No. 90–2711.**

United States District Court,
District of Columbia.

Feb. 6, 1992.

I. Michael Greenberger, Shea & Gardner, Washington, D.C., for plaintiffs.

Sally M. Rider, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Now pending before the Court are the parties' cross motions for summary judgment. The issues raised in the motions have been fully briefed by both parties, and the Court heard extensive oral arguments on February 3, 1992. After carefully considering all pleadings submitted on the outstanding motions, the full administrative record in this case, and the arguments made by counsel at the February 3, 1992 hearing on the motions, the Court shall grant the government's motion for summary judgment on all counts for the reasons that follow.

## SUMMARY OF CASE

Plaintiff Jane Fagan is seeking declaratory relief, injunctive relief, and damages in this action under the Small Business Act, the Administrative Procedure Act, and the fifth amendment. Essentially, she is arguing that the SBA has a *de facto* policy of not accepting white women in the section 8(a) program, which was designed to aid

"economically and socially disadvantaged small business concerns," and that the SBA discriminated against her in not admitting her personnel recruiting business into the section 8(a) program. She alleges she was rejected because of her status as a white woman.

Plaintiff alleges the SBA's actions in discouraging her from applying to the program and in subsequently denying her application were arbitrary, capricious and unsupported by the evidence. Additionally, she alleges that the SBA regulations that require individuals who are not presumed to be socially disadvantaged prove they are by clear and convincing evidence are inconsistent with the Small Business Administration Act. She claims the denial of her application violated the Equal Protection Clause, 42 U.S.C. § 1981 and § 2000d, SBA regulations, and was arbitrary and capricious.

## FACTUAL BACKGROUND

The section 8(a) program was established pursuant to section 8(a) of the Small Business Act, 15 U.S.C. § 637(a),[1] to assist small businesses that are owned, managed and controlled by individuals who are socially and economically disadvantaged, in an effort to enable them to become self-sufficient in the marketplace. 13 C.F.R. § 124.1(b)(1). The goal of the Small Business Act is "to increase the level of business ownership by minorities so that they have a better opportunity to become an integral part of the free enterprise system." *Neuma Corporation v. Abdnor,* 713 F.Supp. 1 (D.D.C.1989).

The SBA was granted statutory authority to develop standards for eligibility for the section 8(a) program. 15 U.S.C. § 634(b)(6) (SBA administrator granted authority to "make such rules and regulations as he deems necessary to carry out the authority vested in him"). The statute also provides that

(7) No small business concern shall be deemed eligible for any assistance pursuant to this subsection unless the Administration determines that with contract, financial, technical, and management support the small business concern will be able to perform contracts which may be awarded to such concern under paragraph (1)(c) and has reasonable prospects for success in competing in the private sector.

15 U.S.C. § 637(a)(7).

The agency promulgated a series of regulations that govern the eligibility determination to enforce the congressional intent that the program be limited to eligible individuals and businesses. *See* 13 C.F.R. §§ 124.101–124.109. These regulations were revised in August, 1989 and are applicable to the plaintiff's January 1990 application as well as the request for reconsideration.

The regulations provide that when an application is received in the SBA District Office, at least seven SBA Officials review the application to determine if the applicant is eligible for the section 8(a) program. The application is initially reviewed at the district level by an eligibility specialist and then is reviewed by several regional agency officials, with the Associate Administrator for Minority Small Business and Capital Ownership Development making the final determination. The regulations provide that within 30 days if the application is denied the applicant is to be notified in writing of detailed reasons for the denial, the applicant's right to request reconsideration and to submit additional documentation in support of the application. Here, the administrative record indicates that the agency complied with these regulations.

The SBA regulations governing the determination of whether or not an applicant qualifies as "socially and economically disadvantaged" provide as follows:

(a) General. Socially disadvantaged individuals are those who have been subjected to racial or ethnic prejudice or cultural bias because of their identities as members of groups without regard to their individual qualities. The social disadvan-

---

1. The Small Business Act generally was designed to assist persons "who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities." 15 U.S.C. § 637(a)(5).

tage must stem from circumstances beyond their control.

\* \* \* \* \* \*

(b) Members of designated groups.

(1) In the absence of evidence to the contrary, the following individuals are presumed to be socially disadvantaged: Black Americans; Hispanic Americans; Native Americans ...; Asian Pacific Americans ...; Subcontinent Asian Americans ...; and members of other groups designated from time to time by SBA according to procedures set forth at paragraph (d) of this section.

\* \* \* \* \* \*

(c) Individuals not members of designated groups.

(1) An individual who is not a member of one of the above-named groups must establish his/her individual social disadvantage on the basis of clear and convincing evidence. A clear and convincing case of social disadvantage must include the following elements:

(i) The individual's social disadvantage must stem from his or her color, ethnic origin, gender, physical handicap, long-term residence in an environment isolated from the mainstream of American society, or other similar cause not common to small business persons who are socially disadvantaged.

(ii) The individual must demonstrate that he or she has personally suffered social disadvantage, not merely claim membership in a non-designated group which could be considered socially disadvantaged.

\* \* \* \* \* \*

(v) The individual's social disadvantage must have negatively impacted on his or her entry into and/or advancement in the business world ... [considering such factors as] denial of equal access to institutions of higher education ... discrimination in hiring; discrimination in promotions and other aspects of professional advancement; ... unequal access to credit or capital; ... discrimination by potential clients; ... and other similar factors which have impeded the individual' business development.

The plaintiff applied for admission to the section 8(a) program in March, 1989. In her application she recounted the discrimination and abuse she had faced. The record indicates that in the plaintiff's statement to the agency she informed the agency that she was 18 when she married an alcoholic man with a violent temper. He beat her over a lengthy period, raping her and causing permanent injuries. They had four children before she sought help from the court system. The plaintiff indicates she encountered resistance from the judiciary when she attempted to have her husband arrested for battery. When her husband finally was arrested, he was released on a $50 bond and returned to beat her again. She fled with their children and was forced to go on welfare. Her husband was ordered to pay only $400 month in child support, and that amount was subsequently reduced to only $200 by a judge who was a member of the same hunting club as her former husband.

The plaintiff recounts difficulty in getting credit because the accounts she had with her husband were solely in his name. She had difficulty maintaining a job, primarily because of child care issues. At one point, in the early 1970's, she worked for a small newspaper in Virginia where she encountered sexual harassment and was forced to quit. She remarried in 1975 and eventually gained employment as a personnel recruiter. She stated that she found that many companies kept male recruiters on retainer, but refused to do so for female recruiters, and that these men often delayed paying her invoices.

In 1980, Ms. Fagan opened her own business, specializing in recruiting civilian and military scientists who develop electronics and weapons systems. She indicated that she was able to amass a number of resumes, only a few of which she submitted to the SBA. However, of the over 70 resumes she submitted, less than 8 were current, viable resumes.

Ms. Fagan claims that she was discouraged from filing her application by an SBA

business opportunity specialist, Ms. Farrant. However, she did submit the application. Her application was rejected for a lack of contract support. She sought a reconsideration, and in September, her application was accepted for processing, but she was later determined to be ineligible for the 8(a) program because she could not show a probability of financial success and she did not meet the criteria of socially disadvantaged.

## DISCUSSION

### I. STANDARD OF REVIEW

#### A. *Review of Agency Decisions*

Judicial review of this case under the Administrative Procedure Act is limited to determining whether the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Neuma Corporation v. Abdnor,* 713 F.Supp. 1 (D.D.C.1989) (applying APA standard in 8(a) case); *San Antonio General Maintenance, Inc. v. Abdnor,* 691 F.Supp. 1462, 1468 (D.D.C. 1987) (applying APA standard in 8(a) case). This standard requires that the court

> consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searchingly careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The standard is a narrow standard whereby "a court is not to substitute its judgment for that of the agency," *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983), but must "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transportation Inc. v. Arkansas–Best Freight System, Inc.,* 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974).

■ As long as the agency decision makers have given reasoned consideration to the issue and have presented a rational basis for the decisions they have made, the court cannot substitute its own judgment for that of the agency. *Motor & Equipment Manufacturers Association v. Environmental Protection Agency,* 627 F.2d 1095, 1105 (D.C.Cir.1979), *cert. denied,* 446 U.S. 952, 100 S.Ct. 2917, 64 L.Ed.2d 808 (1980).

#### B. *Standard for Summary Judgment*

Summary judgment under rule 56(c) is appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (the court must determine "whether there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."). With respect to the counts wherein the plaintiff is challenging the agency actions under the APA, the administrative record provides the scope of materials from which the plaintiff may draw in showing that there are material issues of fact in dispute. *See Neuma Corporation v. Abdnor,* 713 F.Supp. 1, 5 (D.D.C.1989).

■ The plaintiff argues that summary judgment is inappropriate because she still has not had a full opportunity to conduct discovery. This Circuit has held that "summary judgment is appropriate only after plaintiff has had a full opportunity to conduct discovery." *First Chicago International v. United Exchange Co., Ltd.,* 836 F.2d 1375 (D.C.Cir.1988).

■ The government originally filed a motion for summary judgment prior to the completion of any discovery and filed protective orders to prevent discovery. The Court referred all outstanding discovery disputes to Magistrate Judge Robinson, who ruled on the motions to compel and protective orders, granting the plaintiff additional opportunity for discovery.

The Court delayed hearing arguments and ruling on the government's motion for summary judgment until the plaintiff had

some opportunity for discovery on Counts 3–5. Although the plaintiff has argued that additional discovery is needed, the Court finds that the burden of that additional discovery would far outweigh the potential benefit the plaintiff may receive. The plaintiff has asked to depose the involved government decision makers and has asked for additional applications for comparison purposes.[2] However, a significant amount of discovery has taken place and there has been no showing by the plaintiff under rule 56(f) that additional discovery would yield helpful information. The plaintiff has had a sufficient opportunity to discover any material facts in dispute and any evidence supporting her legal arguments. Additionally, the Court finds that there are no genuine issues as to any material fact and that the government is entitled to judgment as a matter of law.

## II. MOTION TO DISMISS COUNT ONE

In Count one of the complaint, plaintiff alleges

SBA's denial of Plaintiff's Form 1017 in March 1989 and August 1989 violated Section 201 of the Reform Act, 15 U.S.C. § 636(j)(11)(G), and was arbitrary, capricious and unsupported by substantial evidence.

■ Summary judgment on count one must be granted in favor of the defendant. Because the Reform Act section that was allegedly violated was not in effect until August 15, 1989, the March letter could not have violated the Act.[3] Additionally, the March determination was not arbitrary, capricious, or an abuse of discretion because the agency acted under the regulations then in effect. Those regulations required a two-step process. First, the agency was to determine whether contract support existed. Only if contract support was found was the agency to proceed to the next step of determining whether the applicant qualified for the program. If no contract support existed, the application was not to be processed further.

In this case, the plaintiff submitted an SBA Form 1017, Eligibility Review and Requirements Request, on February 2, 1989. Her form was reviewed and the SBA determined, looking at the data it received from the Federal Procurement Data Center, that during FY 1988 the federal government had not contracted with any 8(a) firms for personnel recruiting, had no set asides for those services, and in fact only had contracted with large companies for $301,000. The government provided several affidavits describing the search that was conducted. Although the plaintiff asserts that the agency should have conducted a more thorough search, the SBA's actions were rationally based and are supported by the administrative record.

There is no evidence that suggests that the Agency made a subsequent denial of contract support finding in August 1989. The plaintiff admits that no denial was ever communicated to her in any way. However, she asserts that it was made and was improperly withheld from her. She relies upon an August 29, 1989 letter from the EEO office of the SBA responding to her appeal and indicating that her allegations of discrimination were unfounded. The Court ruled in October, 1991 that this letter was not relevant to the claims at issue and that it should not be added to the administrative record. Additionally, that letter merely refers to the prior finding of no support and does not address the issue of contract support in August. Therefore, the plaintiff's reliance on that letter as an indication of arbitrary or capricious behavior by the agency is misplaced. There is no evidence that the agency denied the application on the basis of inadequate contract support following the March, 1989 denial.

On August 15, 1989 the regulations were changed to allow SBA to consider the exist-

---

2. At the February 3, 1992 hearing on the motions, counsel for the defendant indicated that the defendant had offered to turn over a representative sample of applications accepted during the same time period at the same district office. However, the plaintiff refused that offer, demanding full discovery.

3. The Business Opportunity Development Reform Act of 1988, which substantially modified the section 8(a) program, provided that § 201 (the section allegedly violated) was not effective until August 15, 1989. (Pub.L. 100–656, 15 U.S.C. §§ 631, et seq.).

ence of contract support as merely one element of the application. 13 C.F.R. § 124.107(c) (1989). Additionally, new personnel regulations had been developed that allowed government agencies to use recruiting agencies such as that owned by Fagan. 5 C.F.R. § 300.401 *et seq.* Therefore, Ms. Fagan's application was reviewed again and the agency found that contract support did exist. Ms. Fagan was so informed on September 22, 1989 and was instructed that a new application form would be sent to her as soon as they were available from the printer. She received the new application form on December 26, 1989.

### III. MOTION FOR SUMMARY JUDGMENT ON COUNTS TWO—FIVE

The defendant also has moved for summary judgment on the remaining counts, on the grounds that the agency properly considered Ms. Fagan's application and determined that she did not meet the eligibility criteria for admission into the 8(a) program. With respect to this argument, the Court notes that

[i]n determining whether the SBA's actions were arbitrary and capricious, the Court must analyze and give significant weight to the factors expressly relied upon by the SBA.

*Little v. United States,* 489 F.Supp. 1012, 1018 (C.D.Ill.1980), *aff'd,* 645 F.2d 77 (7th Cir.1981).

A. *Count Two*

Count two alleges

SBA's denial of plaintiffs' application for the 8(a) program and request for reconsideration violated Section 8(a) of the Small Business Act, 15 U.S.C. § 637(a), and SBA's regulations at 13 C.F.R. §§ 124.105–.107, and was arbitrary and capricious and unsupported by substantial evidence.

This count must be reviewed under the arbitrary and capricious standard of the APA. The agency had two independent

reasons for their decision, each of which are independently supported by the record. First, the plaintiff's application was denied because the agency did not find that she had the financial ability to succeed. Second, the application was denied because the agency found that the plaintiff had failed to show by clear and convincing evidence that she was socially disadvantaged within the meaning of the section 8(a) program.

### 1. Financial Ability to Succeed

■ The agency determined that Ms. Fagan's firm was not capable of success in a national market. That determination was reviewed by seven SBA officials, none of whom found her potential for success sufficient. Under the SBA regulations, the district office was required to review

the technical and managerial experience and competency of the individual(s) upon whom eligibility is based, the financial capacity of the applicant concern and the concern's record of performance on previous federal and private sector contracts in the primary industry in which the concern is seeking 8(a) certification.

13 C.F.R. § 124.107(b).

In this case, with respect to the second application, Ms. Tyhurst, an eligibility specialist in the San Francisco district office, reviewed the application and found that although contract support existed, the application did not demonstrate that the business had the financial capacity to succeed or that the applicant was socially disadvantaged within the meaning of the 8(a) program.

Specifically, Tyhurst found that Fagan would need substantial capital and that her ability to obtain financing was "unlikely" because she lacked repayment ability, had insufficient equity in the business, had a poor personal credit history, and did not have sufficient collateral.[4] Additionally, the SBA is required by the regulations to consider her prior performance on con-

---

4. The balance sheets provided by the plaintiff indicate that she had no available cash for the business and that her major assets were the resumes she had collected and valued at $50,000 and her business forms which she valued at $10,000. Additionally, her application was not specific enough to determine her capital and she lacked working capital.

tracts, and she did not submit sufficient evidence of prior contract performance.

There is no indication that this decision was arbitrary or capricious. A finding that the plaintiff did not meet the financial ability to succeed prong would be sufficient in and of itself to support summary judgment for the defendant because it provides an independent rationale for the rejection. However, the Court will also address the second, independent issue of social disadvantage.

### 2. Social Disadvantage

■ The second reason for the rejection of her application was that SBA determined that Ms. Fagan was not socially and economically disadvantaged as required by the regulations. Ms. Tyhurst found that Ms. Fagan had made only generalized nonspecific claims of social disadvantage without any direct evidence that she had been hindered in her business as a result of specific acts directed at her because of her gender. She found that Ms. Fagan's claims were "primarily unsupported and rhetorical," and were not supported by specific examples of discrimination. Additionally, Ms. Tyhurst found several discrepancies between Ms. Fagan's claim of social disadvantage and the facts contained in other documents supplied by Ms. Fagan.[5]

With respect to the claim that she was socially disadvantaged, the government asserts that Ms. Fagan did not show by clear and convincing evidence that she was a "longtime residence in an environment isolated from the mainstream of American society," (she lived in Florida, not Appalachia),[6] that she *personally* suffered social disadvantage, or that social disadvantage impacted her ability to gain higher education[7] or business advancement. Her personal eligibility statement refers primarily to a pattern of prejudice against women and not to specific prejudice against her. Additionally, the SBA determined that her allegations of discrimination in employment were general and not sufficiently specific to establish clear and convincing evidence that she was socially disadvantaged. Although she stated that she had limited access to financial resources, was unable to secure a loan, did not have capital to hire employees, and was limited in her ability to obtain contracts, the plaintiff did not indicate what specific discriminatory practices caused these problems. Although the plaintiff asserted in her application that she was denied credit on the basis of her gender, the credit report indicates that she had access to a line of credit and failed to repay money she had borrowed. As a result, her lack of available credit was attributable, at least in large part, to her credit history rather than to gender bias or particular discriminatory practices.

As additional evidence of discrimination, Ms. Fagan also asserts that men tried to steal her business, that male recruiters were on retainer while women were not, that men delayed paying her money she was due, and that she was a victim of sexual harassment at a newspaper job she held in Virginia in 1973. The only incident of gender bias that is factually supported is that of the sexual harassment she encountered at her newspaper job. That one incident does not constitute the chronic discrimination that is sufficient to qualify her as socially disadvantaged within the meaning of the section 8(a) program.

5. Specifically, among other discrepancies, Ms. Fagan claimed that she was disadvantaged because she was raising four children alone on welfare, yet her application indicated she remarried while the children were dependent, and other documents she submitted indicated the children were now all over 20 years old and she had not claimed them as dependents on her income taxes since 1987. She also claimed to be living in a house with no heat because of her poverty level, yet she realized a $54,557 gain from the sale of her home as reported on her 1986 tax records. She claimed to have had only $9.00, although her tax records indicated that she had personal investments that earned income that she did not include on her personal financial statement.

6. It seems fairly clear that the Congressional intent behind this provision was to help people who, because of residency in a depressed area like Appalachia, could not overcome social barriers.

7. The agency found that she was entitled to reduced fee or free tuition in the California State Community College system.

Although the Court has great sympathy and admiration for Ms. Fagan, the fact that she was a battered woman does not demonstrate that there was bias against her because of her gender or that her entry into the business arena was negatively affected. Similarly, although she had difficulty finding a job, she admits that this was because of her young children. Although Ms. Fagan was economically disadvantaged, the Court cannot find that she was socially disadvantaged under the meaning in section 8(a).

It is also important to note that both of the separate and independent grounds found by Ms. Tyhurst for denial were supported by agency officials in the regional office as well as the central office after their review according to the regulations. The record indicates that the final decisions to deny plaintiff's application and request for reconsideration were made after a thorough review by several officials within the agency, as provided in the regulations. In accordance with the regulations, Ms. Fagan's application was reviewed by officials in the San Francisco District and Regional offices, and by the Central office. There is no indication that the agency acted arbitrarily or capriciously and summary judgment is appropriate.

When Ms. Fagan requested reconsideration, she submitted additional evidence in support of her application. At that time, a different eligibility specialist, Ms. Montgomery, determined that the evidence was not sufficient to warrant reversing the original decision to deny her application. One area in which Ms. Fagan submitted additional information was the resumes. The SBA requested additional documentation of thirty resumes of current candidates. She supplied eight current resumes and seventy substantially outdated resumes.

Ms. Montgomery found that the financial statement was still lacking an indication of sufficient assets or loan assistance to satisfy the requirement of financial capability. She also found that the information supplied by Ms. Fagan about her social disadvantage was merely a reiteration of her earlier statements and did not indicate how specific instances of gender discrimination had inhibited her entry into the business arena. This request for reconsideration also went through several layers of review within the SBA. Ms. Fagan was informed on August 24, 1990 that the request was denied.

The Court finds that as a matter of law the agency's actions in denying the application and in subsequently denying the request for reconsideration were neither arbitrary nor capricious. Accordingly, summary judgment as to Count two of the complaint must be granted for the defendant.

### B. *Count Three*

■ Count three alleges

To the extent that it requires persons who are not presumed to be socially disadvantaged to prove their social disadvantage by "clear and convincing evidence," SBA's regulation at 13 C.F.R. § 124.105(c) is inconsistent with the Small Business Act, 15 U.S.C. § 637(a)(5).

In this Count, the plaintiff is seeking a declaratory judgment that the regulations promulgated by the SBA that require that non-minorities prove their social disadvantage by "clear and convincing evidence" are inconsistent with the Small Business Act. However, the clear purpose of the 8(a) program is to promote businesses owned by socially and economically disadvantaged persons who specifically were identified by Congress. Congress discussed the problems faced by women and indicated that women, like other non-minorities, should be allowed into the program on a case-by-case basis if they prove they were socially and economically disadvantaged.

When the agency promulgated the clear and convincing standard for non-minorities, they stated their reasons specifically:

In enacting Pub.L. 95–507, Congress did not mean to bestow 8(a) program benefits indiscriminately on small business persons. Rather, it sought to single out for special treatment those persons who have had greatest difficulty through no fault of their own, in achieving a competitive position in the business world. Hence, its designation of members of

certain minority groups as socially disadvantaged. The clear and convincing standard will ensure that only those individuals who have been disadvantaged to the same degree as designated group members will have access to the 8(a) program. A lesser standard of proof ... would allow weak cases of social disadvantage to be made, thereby flooding the program with firms with little claim to or little need to, its remedial benefits. A more rigorous standard ... would make it overly difficult for socially disadvantaged individuals who are not members of designated groups to gain entry into the program.

45 Fed.Reg. 79413, December 1, 1980.

Additionally, the agency's understanding of Congressional intent is supported by the fact that although Congress in 1988 passed a Reform Act that made extensive changes in section 8(a), and was critical about a number of aspects of the 8(a) program as it was being administered, the regulations regarding social disadvantage and the clear and convincing standard were neither amended nor criticized.

The plaintiff complains that the standard used to determine whether someone is disadvantaged is vague and subjective and that this only fosters intentional discrimination. Although the Court notes that the standard may be less than precise and is somewhat subjective, Ms. Fagan was not so close to the line that the subjectivity influenced the decision to reject her application. None of the officials who reviewed her application thought she met the 8(a) definition of socially disadvantaged.

There is no indication that the clear and convincing standard was not properly promulgated. Additionally, the clear and convincing standard is in conformity with the purpose of the section 8(a) program, as evidenced by the failure of Congress to object to these regulations when it passed the Reform Act. *See Central States Con-*struction, Inc. v. Small Business Administration,* 770 F.Supp. 1447, 1454 (D.Kan. 1991) ("designating certain groups as presumed to be socially disadvantaged and requiring others to show by clear and convincing evidence they are socially disadvantaged is not contrary to [15 U.S.C. § 637(a)(8) ]"). Accordingly, the defendant's motion for summary judgment must be granted on this Count.

### C. Count Four

■ The government asserts that the plaintiff has not made a *prima facie* case of racial discrimination under 42 U.S.C. § 1981 [8] or 42 U.S.C. § 2000d.[9] To establish a *prima facie* case under § 1981, the plaintiff must demonstrate a racially discriminatory purpose. *See Little v. United States,* 489 F.Supp. 1012, 1022 (C.D.Ill. 1980) ("the use of § 1981 must be guided by the principles announced by the Supreme Court for application of the Fourteenth Amendment to discrimination cases"), *aff'd,* 645 F.2d 77 (7th Cir.1981). Under fourteenth amendment doctrine, a finding of racially discriminatory purpose is necessary and a showing of a racially disproportionate impact is not enough. *See Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 2049, 48 L.Ed.2d 597 (1976).

The Court has outlined considerations in discrimination claims: the history behind the decision, the sequence of events that occurred, whether there was any variance between standard procedures and the actual procedures used, and contemporaneous statements made by the individuals who made the decisions. *See Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 267, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977). The Court has also noted that it is not necessary that the discriminatory purpose be the only factor or even the dominant factor that influenced the act that was allegedly discriminatory as long as discriminatory purpose was a motivating factor. *Id.* at 265, 97 S.Ct. at 563.

---

**8.** 42 U.S.C. § 1981 provides that all people in the United States "have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, ..."

**9.** 42 U.S.C. § 2000d provides that "[n]o person in the United States shall on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

 In this case the regulations were strictly followed with no departures and the sequence of events supports the agency's decision. Additionally, neither the administrative record nor the contemporaneous statements of the decision makers shows any discriminatory motive.

The plaintiff offers as proof of discriminatory purpose the following allegations:

1) the SBA has refused admission to all non-minority women who applied since 1987;

2) some SBA officials still believe the 8(a) program is only for blacks and not for other minorities;

3) Erline Patrick, former head of 8(a) stated "no white women company will be eligible for 8(a) as long as I'm running" the program;

4) high ranking officials of SBA have acknowledged the vagueness of the regulations;

5) SBA ignored the recommendations of its own Office of Civil Rights Compliance to institute written guidelines and conduct training sessions on the regulations;

6) SBA mistreated other white women by repeatedly discouraging them from applying, delaying their applications, and denying their applications on the ground that they are not socially disadvantaged; and

7) SBA mistreated Fagan personally by attempting to discourage her from applying because she is white and by delaying action on her application and eventually denying the application without valid reasons.

Plaintiff asserts that these factors establish a *de facto* policy of discrimination within the SBA against white female applicants for the section 8(a) program. A recent GAO report indicates that SBA has not admitted any female non-minority applicants to the 8(a) program since 1987. Plaintiff argues that this constitutes the "inexorable zero" referred to in discrimination cases, is a clear indicator of intentional discrimination, and constitutes a *prima facie* case of intentional discrimination.

The Court has stated that plaintiffs must show discriminatory purpose rather than mere impact, unless they demonstrate "a clear pattern, unexplainable on grounds other than [discrimination]...." *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977). Here, the pattern of white women not being admitted to the program can be explained by acknowledging that they are not presumed disadvantaged.

Even if the Court assumes that these facts are sufficient to establish a *prima facie* case of discrimination, the government has shown that there was a rational, nondiscriminatory basis for the decisions the government made. Accordingly, even assuming that the plaintiff has presented a *prima facie* case of discrimination, the Court finds that the exclusion of white women, and for that matter white men, results because of the valid presumption of social disadvantage for minorities. The affidavits submitted by the SBA officials who reviewed the application indicate that each determined the application was deficient for two independent, nondiscriminatory reasons: the plaintiff did not demonstrate a likelihood of success and the plaintiff had failed to demonstrate by clear and convincing evidence that she was socially disadvantaged.

Although the plaintiff puts a great amount of importance on the statistics that demonstrate the agency's failure to accept non-minorities to the program, even of those individuals presumed to be socially disadvantaged, less than 50% gain admission into the program. This is primarily because of the requirement that the applicant also demonstrate ability to succeed, pursuant to the directives of Congress.

The plaintiff has failed to show that she was eligible for the 8(a) program and that she was not admitted because of discrimination. Here there was the independent basis for denial that she did not demonstrate financial capability in addition to the determination that she did not meet the criteria for socially disadvantaged.[10]

**10.** Additionally, the Court notes that Ms. Fagan has no claim under 42 U.S.C. § 2000d because that section does not apply to direct benefit

### D. *Count Five*

Count five alleges that the SBA violated various constitutional and statutory provisions by discriminating against the plaintiff on the basis of her sex. However, there is no evidence that the plaintiff was discriminated against on the basis of her sex. All of her allegations and statistical information revolve around the fact that she is white, not that she is a woman. There is no evidence that white men are treated any more favorably than white females.[11] Accordingly, the defendant's motion for summary judgment must be granted on Count five as well.

### CONCLUSION

For all of the foregoing reasons, the Court shall grant summary judgment in favor of the defendant and shall dismiss the case.

programs, but only to non federal entities that receive federal funding and provide that funding to the ultimate beneficiary. *Soberal–Perez v. Heckler,* 717 F.2d 36, 38–41 (2nd Cir.1983) ("statute was meant to cover only those situations where federal funding is given to a non-federal entity which, in turn, provides financial assistance to the ultimate beneficiary"), *cert. denied,* 466 U.S. 929, 104 S.Ct. 1713, 80 L.Ed.2d 186 (1984).

11. The Court also notes that the plaintiff would not be entitled to either punitive or compensatory damages because sovereign immunity bars a claim for monetary damages unless there is a clear waiver of that immunity. Absent specific statutory authority, the United States cannot be sued for punitive damages. *See e.g., Carter v. Marshall,* 457 F.Supp. 38, 41 (D.D.C.1978). There is no statutory authority for punitive damages nor any statutory waiver for compensatory damages for intentional acts of discrimination that would apply in this case.